**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| TERESA PETRY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 4:22-CV-796 RLW |
| | ) |
| ROCKWOOD SCHOOL DISTRICT, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Rockwood School District's Motion for Summary Judgment. (ECF No. 20). Plaintiff opposes the motion and it is ready for disposition. (ECF No. 26). The Court will grant Defendant's motion for the reasons below.

**Background and Facts**

Defendant operates several sports fields at its Rockwood Summit High School campus in Fenton, Missouri. (ECF No. 22-2 at 8:24-11:10). At issue in this case is a baseball field ("field") in the southwest corner of the campus, which abuts Plaintiff's property at 1661 Wild Cherry Park Drive ("Property"). (ECF No. 3). Plaintiff's front yard runs parallel to the field's third baseline. (ECF No. 22-2 at 12:11-24; ECF No. 22-4 at 14:10-16; ECF No. 22-1). A lightly wooded portion of the yard runs along the shared boundary of the properties. (ECF No. 22-2 at 21:2-12; ECF No. 22-4 at 55:24-57:7; ECF No. 22-6).

Prior to 2017, an eight-foot fence ("field fence") surrounded the field and an additional six-foot fence ("perimeter fence") ran along the Property between the wooded area and the west side of the field. (ECF No. 22-2 at 21:5-22:6). Because the perimeter fence did not tie-in to the field fence, spectators and players were able to enter the Property to retrieve foul balls. *Id.* at 25:15-

26:25. The field also had a 12- to 15-foot backstop between home plate and the spectator area. *Id.* at 21:5-22:6.

Defendant began renovations to the field in 2017. (ECF No. 22-2 at 23:21-25:8). Plaintiff's parents, Jane and Harold Petry, owned the Property at that time. (ECF No. 3 at 1; ECF No. 22-2 at 25:9-14; ECF No. 22-4 at 10:11-12; 15:15-17). Christopher Freund, Director of Facilities for the Rockwood School District, met with Plaintiff's parents in 2017 and agreed to make certain improvements to address their concerns about trespassing. (ECF No. 22-2 at 23:21-25-8). As part of these improvements, Defendant extended the perimeter fence and connected it to the field fence to prevent patrons from entering the Property. *Id.* at 23:21-25:8, 36:10-16. Defendant also installed a 20-foot backstop between home plate and the bleachers. *Id.* at 15:10-24, 23:21-25:8, 35:22-36:9. Beyond that, Defendant planted new shrubs to reinforce the wood line along Plaintiff's Property and installed netting along the south dugout. *Id.* at 23:21-25:8, 26:18-27:5, 33:1-11. Defendant also erected "no trespassing" signs and added locks the gates around the field. *Id.* at 65:2-4, 86:9-18.[1]

Plaintiff began living at the Property in January of 2018. (ECF No. 3 at ¶ 1; ECF No. 22-4 at 10:3-24). She purchased the Property from her parents in June of the same year. (ECF No. 22-4 at 8:11-18). Plaintiff was aware of the field before moving to the Property. *Id.* at 28:9-15. Even so, Plaintiff asserts that Defendant's usage of the field "has become so frequent and available to the public for multiple uses, including a dog park, that is has constituted . . . a grossly unreasonable use of [district] property in a manner that causes severe detriments to Plaintiff [and] the fair market

---

[1] The parties dispute whether Defendant made these changes in response to Plaintiff's parents' concerns and whether Defendant actually locks the gates around the field on a regular basis. While disputed, these facts are not material as they would not affect the outcome of this case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

value of the Property[.]" (ECF No. 3 at ¶ 5). Plaintiff also alleges that Defendant has deprived her of her right to quiet enjoyment. *Id.* Plaintiff specifically complains of litter, "loud, boisterous crowds," harassment by patrons, and baseballs that "rain down" on the Property. *Id.*

Plaintiff initially filed this action on June 9, 2022, in the Circuit Court of St. Louis County, Missouri. (ECF Nos. 1, 3). Defendant removed the matter to this Court on July 29, 2022, on the basis of federal-question jurisdiction. (ECF No. 1). Plaintiff asserts causes of action for inverse condemnation and a taking under the Fifth Amendment. (ECF No. 3 at ¶¶ 8-12). She seeks monetary damages, attorney's fees, and injunctive relief. *Id.* at ¶¶ 8-12. The parties have completed discovery and Defendant now seeks summary judgment on all claims. (ECF NO. 20).

**Legal Standard**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson*, 477 U.S. at 248. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id*. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*,

3

477 U.S. at 248. "The nonmoving party may not rely on allegations or denials" but rather "must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor on more than mere speculation or conjecture." *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)) (internal quotation marks omitted).

## Discussion

Plaintiff alleges a violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution, as made applicable to the States through the Due Process Clause of the Fourteenth Amendment. U.S. Const. amends. V, XIV; *Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226 (1897). "The Takings Clause . . . prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). It protects property owners from both physical and regulatory takings. *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 732 (8th Cir. 2022). A physical taking results from the direct appropriation of property by governmental actors. *Id.* (citing *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015)). A regulatory taking arises where governmental restrictions on the use of property go "too far." *Id.* "Direct condemnation, by invocation of the State's power of eminent domain, presents different

4

considerations from cases alleging a taking based on a burdensome regulation." *Palazzo*, 533 U.S. at 628. In Missouri, the term "inverse condemnation" refers to "a cause of action against a governmental agency to recover the value of the property taken by the agency, through no formal exercise of the power of eminent domain has been completed." *Cnty. of Scotland v. Missouri Pub. Entity Risk Mgmt. Fund*, 537 S.W.3d 358, 364 (Mo. Ct. App. 2017).

### I. Takings Clause

Although unclear, Plaintiff appears to assert that Defendant's usage of the field constitutes a direct physical taking in the form of errant baseballs, trespassers, and loud sounds. (ECF No. 1; ECF No. 25 at ¶ 10). "The government commits a physical taking when it uses its power of eminent domain to formally condemn property." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (citation omitted). A physical taking may also arise where the government takes possession of property or otherwise occupies it without just compensation. *Id.* (citations omitted).

Plaintiff offers no support for the idea that even the frequent presence of baseballs, trespassers, and sounds constitutes true possession or occupation in the traditional sense. At this stage, it is not enough to rely upon allegations and denials. *Carter*, 956 F.3d at 1059. Plaintiff must instead bring forth sufficient probative evidence that would permit a finding in her favor beyond mere conjecture or speculation. *Id.* Plaintiff has not done so. Thus, the Court will grant Defendant's Motion for Summary Judgment to the extent Plaintiff's Complaint can be understood to assert a claim of physical possession or occupation of her Property.

Plaintiff's Complaint is better understood to assert a regulatory taking. "While property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). "This area of the law has been characterized by ad hoc, factual inquiries,

5

designed to allow careful examination and weighing of all the relevant circumstances. *Id.* (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)) (internal quotation marks omitted). The Supreme Court has offered two guiding principles for determining when regulation is so onerous that is constitutes a taking. *Id.* First, "with certain qualifications . . . a regulation which denies all economically beneficial or productive use of law will require compensation under the Takings Clause." *Id.* (quoting *Palazzo*, 533 U.S. at 617) (cleaned up). Second, where a regulation does not deprive the owner of all economically beneficial use, "a taking still may be found based on a complex of factors, including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* (citing *Palazzo*, 533 U.S. at 617) (cleaned up).

Plaintiff does not contend that Defendant's use of the field has denied her of all economically beneficial or productive use of the Property. Thus, the Court must consider the "complex of factors" outlined in *Palazzo*. 533 U.S. at 617.

Plaintiff acknowledges that the value of the Property has increased since she purchased it in June 2018. (ECF No. 25 at ¶ 8). But Plaintiff asserts that Defendant's "unreasonable uses" of the field have nevertheless substantially impaired her use and quiet enjoyment of the Property. (ECF No. 3 at ¶ 7). Plaintiff offers no evidence of any negative economic impact or interference with her investment-backed expectations. Indeed, when asked via interrogatory to describe any physical damage to Plaintiff's property, Plaintiff offered a boilerplate objection followed by a single responsive sentence: "Plaintiff's landscaping has frequently been damaged by foul balls struck into her yard." (ECF No. 25-2 at ¶ 14).

6

Plaintiff also fails to establish the third factor. Beyond the occasional use of terms like "careless" and "unreasonable," Plaintiff makes little effort to explain why the character of Defendant's action supports a finding in her favor, especially absent any evidence relating to the first two factors. Unsupported allegations of this sort are not enough at this stage. *See Carter*, 956 F.3d at 1059. All three factors weigh in Defendant's favor. The Court will grant Defendant's Motion for Summary Judgment on Plaintiff's takings claim.

## II. Inverse Condemnation

Plaintiff asserts that Defendant's usage of the field "constitute[s] a continuing but temporary nuisance that has caused, and continues to cause, substantial impairment of Plaintiff's use and quiet enjoyment of her Property and the loss in the fair rental value of the Property." (ECF No. 3 at ¶ 7). In Missouri, "[i]nverse condemnation is the exclusive remedy when private property is taken or damaged without compensation as a result of a nuisance operated by an entity that has the power of eminent domain." *Scott Fam. Properties, LP v. Missouri Highways & Transp. Comm'n*, 546 S.W.3d 605, 607 (Mo. Ct. App. 2018). "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property." *Id.* In determining whether a nuisance amounts to a taking, the Court must consider: (1) notice by the complaining landowner, (2) an unreasonable operation in spite of that notice, (3) injury, (4) damage, and (5) causation. *Id.* at 608 (citing *Miller v. City of Wentzville*, 371 S.W.3d 54, 57 (Mo. Ct. App. 2012)).

There is no dispute that Plaintiff informed Defendant of her concerns. The question, then, is whether Defendant continued an unreasonable operation in spite of Plaintiff's concerns. *Id.* The Court concludes that it did not.

7

The parties agree that there are no zoning restrictions that prevent Defendant from operating the field on its property. (ECF No. 25 at ¶ 2). The parties also agreed that Defendant made at least some improvements to the field in response to concerns from Plaintiff's parents. *Id.* at ¶ 6. Even so, Plaintiff asserts that Defendant's use of the field is unreasonable because "utilization of the facility skyrocketed after [the renovations were] finished[,]" resulting in more unwelcome baseballs and noise. (ECF No. 26 at 4-5). Plaintiff further contends that Defendant has failed to prevent unauthorized access and use of the field. *Id.* at 5.

In her response to Defendant's interrogatories, Plaintiff highlights the following allegedly unreasonable uses of the field: (1) Defendant has rented the field innumerable times to teams and kids of all ages not associated with the High School; (2) The field is used each year for a week-long baseball camp for children; (3) The field is left open to the public as a park for use at any time; (4) The field is used as a no-leash dog park and venue for other sports activities; (5) The field is used for events that draw large crowds that sometimes erect pop-up tents; and (6) Individuals using the field frequently play loud music. (ECF No. 25-2 at ¶ 9). In support of her allegation that the field is used as a no-leash dog park, Plaintiff cites three occasions where two or more dogs ran along the fence line. *Id.* at ¶ 5. Plaintiff asserts that when she told the owner of three greyhounds that the field was not a dog park, the owner cursed at her and told her: "I'm here all the time." *Id.* Plaintiff further asserts that Defendant's usage of the field has made her feel unsafe outside and that she has suffered anxiety, migraines, and stress-related eczema as a result. *Id.* at ¶ 10.

Plaintiff relies upon *Jacobson v. Metro. St. Louis Sewer Dist.* for the proposition that a taking may be found where the government unreasonably maintains its property in a manner that results in a nuisance or trespass that impairs an individual's peaceful enjoyment of her property. (ECF No. 26 at 6); *see Jacobson v. Metro. St. Louis Sewer Dist.*, No. 4:14-CV-01333-AGF, 2014

WL 7027881, at *1 (E.D. Mo. Dec. 11, 2014). In *Jacobson*, the property owners sued the sewer district for inverse condemnation, among other claims, after they discovered an unrecorded storm water sewer on their property. *Id.* The owners asserted that the sewer leaked and caused other dangerous defects. *Id.* The court denied the sewer district's motion to dismiss on the basis that the property owners had sufficiently stated a claim for inverse condemnation. *Id.*

*Jacobson* is unhelpful for several reasons. First, the property owners in *Jacobson* asserted a claim for inverse condemnation sounding in trespass, not nuisance.[2] *Id.* Second, *Jacobson* involved allegations of a permanent trespass committed by a public utility, not the irritating byproducts caused by the use of an adjacent property. And third, the court in *Jacobson* considered whether the property owners made sufficient factual allegations to survive a motion to dismiss, not whether they provided sufficient probative evidence to permit a finding in their favor on more than mere speculation or conjecture. *Id.*

Even viewing the facts in the light most favorable to Plaintiff, there is no basis for this Court to conclude that Defendant's use of the field is unreasonable. Plaintiff cites no authority to show that the alleged nuisances are anything more than the foreseeable consequences of living next to a baseball field.

It is undisputed that an eight-foot fence surrounds the field and that an additional six-foot fence runs along Plaintiff's property. It is also undisputed that Defendant has erected a 20-foot

---

[2] Plaintiff's Complaint cannot reasonably be understood to bring an inverse condemnation claim sounding in trespass. Plaintiff clearly contemplates a claim sounding in nuisance, as made clear by the sentence immediately preceding Count I: "The conditions caused by the Insults, as described above, constitute a continuing but temporary nuisance that has caused, and continues to cause, substantial impairment of Plaintiff's use and quiet enjoyment of her Property and loss in the fair rental value of the Property." (ECF No. 3 at ¶ 7). But even if Plaintiff had brought an inverse condemnation claim sounding in trespass, that claim would fail for reasons discussed in Part I of this analysis.

backstop and "no trespassing" signs. And while the parties dispute the density of the foliage running between Plaintiff's yard and the field, it is undisputed that the narrow wooded area provides at least some protection from foul balls.

Reasonability aside, Plaintiff cannot establish damages. Where a public entity only temporarily damages the property rights of a property owner, the proper measure of damages is the diminution in value of the use of occupancy of the property. *Byrom v. Little Blue Valley Sewer Dist.*, 16 S.W.3d 573, 577 (Mo. banc 2000) (citation omitted). Plaintiff concedes that her property value has increased since she purchased the property in 2018. (ECF No. 25 at ¶ 8).[3] For these reasons, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's inverse-condemnation claim.

## Conclusion

Plaintiff has not established the existence of genuine issues of material fact. Thus, the Court will grant Defendant's Motion for Summary Judgment. (ECF No. 20). *See Anderson*, 477 U.S. at 248.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. (ECF No. 20).

---

[3] Plaintiff contends that she is nevertheless entitled to nominal damages. (ECF No. 26 at 3). "[N]ominal damages are appropriate where a legal right has been violated but there is no evidence from which to ascertain the value of the damages." *Heuer v. City of Cape Girardeau*, 370 S.W.3d 903, 916 (Mo. Ct. App. 2012). Nominal damages are unavailable because Plaintiff has not established the violation of a legal right. Injunctive relief is unavailable for the same reason.

An appropriate judgment will follow.

                                        */s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 20th day of December, 2023.